JUSTICE TRIEWEILER
dissenting.
I dissent from the majority opinion.
I agree with the District Court’s conclusion that whether M.H.’s independent education program was implemented pursuant to § 504 *137 of the Rehabilitation Act of 1973, or the Individuals With Disabilities Education Act is a distinction without a difference.
Although not necessary to the implementation of § 504 services, an independent education program is one alternative method of complying with the requirements of § 504 of the Rehabilitation Act. The following federal regulations illustrate the significance of an independent education program (IEP) in the context of § 504.
34 C.F.R. § 104.1 provides that:
The purpose of this part is to effectuate section 504 of the Rehabilitation Act of 1973, which is designed to eliminate discrimination on the basis of handicap in any program or activity receiving Federal financial assistance.
34 C.F.R. § 104.33(a) provides that:
A recipient that operates a public elementary or secondary education program shall provide a free appropriate public education to each qualified handicapped person who is in the recipient’s jurisdiction, regardless of the nature or severity of the person’s handicap.
34 C.F.R. § 104.33(b) gives the following explanation of what is included in an “appropriate public education”:
(1) For the purpose of this subpart, the provision of an appropriate education is the provision of regular or special education and related aids and services that (i) are designed to meet individual educational needs of handicapped persons as adequately as the needs of nonhandicapped persons are met and (ii) are based upon adherence to procedures that satisfy the requirements of §§ 104.34, 104.35, and 104.36.
Although an individualized education program is not necessary to satisfy the § 504 requirement for “appropriate public education,” it is one acceptable method of complying with that requirement. 34 C.F.R. § 104.33(b)(2) provides:
Implementation of an individualized education program developed in accordance with the Education of the Handicapped Act is one means of meeting the standard established in paragraph (b)(l)(i) of this section.
In other words, when an individualized education program is developed for § 504 students to satisfy the requirement that an appropriate public education is being provided by designing services necessary to meet an individual’s educational needs, that IEP is developed to satisfy the secondary education program’s federal obligation to that student. Therefore, an IEP developed pursuant to these *138 regulations is no less a federally-protected right than an IEP developed pursuant to 20 U.S.C. § 1401(a)(18) of the IDEA. Logically, when participation in interscholastic sports is included as a component of an IEP developed for § 504 students, it is also a federally-protected right.
The Montana High School Association (MHSA) was a party to T.H. v. Montana High School Association (D. Mont. Sept. 24, 1992), CV 92-150-BLG-JFB. It did not appeal from the Federal District Court’s adverse decision in that case, and is therefore, collaterally estopped from denying its applicability based on subsequent decisions by federal courts of appeal in other circuits.
In the relevant part of the T.H. decision, Federal District Court Judge Battin held that:
20 U.S.C. § 1400(c) guarantees T.H. the right to a free and appropriate public education, “provided in conformity with [an] individualized education program ....” 20 U.S.C. § 1401(18); 34 C.F.R. § 300.4. When participation in interscholastic sports is included as a component of an IEP as a “related service,” see 20 U.S.C. § 1401(1), (17), the “privilege” of competing in interscholastic sports is transformed into a federally protected right.
8. Because T.H. has a federally protected right, and not a mere privilege, to participate in interscholastic sports, due process required that the MHSA conduct meaningful, individualized inquiry into T.H.’s request for a waiver from the age rule. ... By failing to conduct a case-specific factual inquiry into T.H.’s request for a waiver, and by denying a waiver without a sufficient evidentiary basis for that decision, the MHSA has made a mockery of the waiver provisions.
10. In this context, due process requires that the MHSA conduct an individualized inquiry to determine whether any of the four stated concerns underlying the age rule are implicated and violated by T.H.’s participation in interscholastic sports, before it may deny waiver of that rule. The mere fact that T.H. is over the stated age limit justifies initial application of the rule, but does not justify a refusal to waive the rule, where a federally protected right to participate is concerned.
11.....
First, the MHSA must conduct a hearing and determine whether T.H.’s participation in interscholastic sports actually creates a safety risk to other players. ...
*139 Next, the MHSA must determine whether T.H.’s participation would skew the overall competitiveness of the particular interscholastic sports events. ...
Likewise, the MHSA must specifically determine whether Plaintiff’s participation would result in the exclusion of other eligible players, and other facts relevant to intra-team competition.
T.H., CV 92-150-BLG-JFB, slip op. at 9-12 (footnote omitted).
It is clear from the District Court’s findings of fact in this case that MHSA did not conduct the kind of hearing, nor make the kind of findings which would enable M.H., his family, or the District Court to understand the impact of his participation on the safety of other students, whether his participation would skew competitiveness in his events, or the effect of his participation on other athletes. Absolutely no findings were made in this regard by the MHSA. Instead, it simply shifted the burden to M.H. to prove that these consequences would not occur, and concluded he had not done so. More is required to dispense with the rights provided by federal law.
The MHSA has not contended on appeal that the District Court’s findings of fact were clearly erroneous. Therefore, based on the law which is applicable to this case, the following findings by the District Court are dispositive:
7. ... It was determined by the Child Study Team that M. H. Jr. should receive Section 504 services, because of the discrepancy between the ability of M. H. Jr. to perform well in math and his actual achievements in math. It was further determined that M. H. Jr.’s “I.E.P. will be written by Mr. Masolo (504)”. An I.E.P. is an Individualized Education Program and Section 504 refers to Section 504 of the Federal Rehabilitation Act of 1973, 29 U.S.C. Section 794.
9.... The Child Study Team determined that “[M.H.] does much better in his school work when he is involved in wrestling. The Child Study Team strongly recommended that [M.H.] participate in wrestling for the 1995-96 school year.” Accordingly, Mr. Masolo, acting pursuant to the directions of the Child Study Team, set forth the following accommodation in writing for M. H. Jr.:
ACCOMMODATION
1. The 504 coordinator will monitor [M.H.] in his math class on a monthly basis.
*140 2. [M.H.] should be involved in wrestling to insure even great academic success for the 1995-96 school [year].
10. The above special education program has been in place for M. H. Jr. since he began his senior year at Butte High School for the 1995-96 school year. ...
23. The record before this Court does not convince it that the MHSA conducted such an individualized, factual inquiry. The only official form that was adopted by the MHSA seeking facts related to the above three concerns was a form that was to be used when an appeal of the age rule was requested. This form was Plaintiffs’ Exhibit 2B and it asks only for limited general information. No other directions are given to the student seeking the waiver or the student’s representative as to the information that should be provided to the MHSA.
24. The minutes of the first meeting that was held with regard to the appeal (Pi’s Exh. 6) set forth no facts relating to the three concerns underlying the age rule, other than reciting that a poll of the schools against whom M. H. Jr. might be competing in football and in wrestling revealed that seven schools opposed his participation in football and seven schools were in favor of it. With regard to wrestling, twenty-two schools did not object to him participating in wrestling, and eleven schools did object.
25. The minutes of the second hearing where the request for the waiver from the age rule was discussed (see Defendants’ Exhibit A) are even briefer, stating only that the motion was denied after much discussion. There is nothing before the Court that would indicate what, if any, pertinent facts were discussed.
26. The letter from Dan L. Freund (Pi’s Exh. 9) stating that the appeal was denied also sets forth no facts upon which the board’s decision could be based.
27. In view of the extremely sparse documentary record relating to the deliberations of the MHSA, the Court finds that the testimony of Leo Wohler and Dan Freund was not credible.
The majority opinion constructs a substantive difference, where none exists, between those rights created by the Individuals with Disabilities Education Act and the Federal Rehabilitation Act of 1973. In the process, the majority arbitrarily denies procedural safeguards to one class of handicapped students, while implicitly recognizing the need for procedural safeguards for a different class of handicapped *141 students. Whether analyzed in terms of the law, or common sense, that distinction is indefensible.
The District Court’s decision was comprehensive, well reasoned, and fully supported by the record in this case. I would affirm the District Court’s judgment, and for the reasons given, dissent from the majority opinion.
CHIEF JUSTICE TURNAGE and JUSTICE HUNT join in the foregoing dissenting opinion.